1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   COUNTY OF SAN JOAQUIN,                    No.  2:16-cv-00816-KJM-EFB

12                  Plaintiff,

13        v.                                   ORDER

14   DAVID JOHNSON, et al.,

15                  Defendants.

16

17

18            From September 2011 to March 2016, several defendants connected with Herman

19   and Helen's Marina engaged in numerous acts allegedly in violation of state law and County

20   ordinances.  The County of San Joaquin brought suit against defendants in state court, contending

21   defendants' acts constituted a nuisance.   Defendants removed the case, contending this court has

22   federal admiralty jurisdiction because the Marina is located on "navigable federal waters."  The

23   County disagrees with defendants, and has moved to remand the case to state court.

24            This motion has been submitted without a hearing, ECF No. 33, and for reasons

25   explained below, based on the record before the court, the County's motion is GRANTED.

26   /////

27   /////

28

                                              1

1    I.        BACKGROUND

2              A.       Request for Judicial Notice and Motion to Strike

3              Defendant John Campagna requests this court take judicial notice of the following

4    facts: (1) the "aluminum shards" plaintiff discovered on the Marina dock were non-toxic; and

5    (2) the "Title 22 'Hazardous Waste' Toxicity Evaluation of Five Waste Samples" plaintiff

6    collected from Marina vessels discloses that none were toxic to fish.  ECF No. 28-1 at 2.  Because

7    these facts are irrelevant to resolution of the pending motion for remand, Mr. Campagna's request

8    is DENIED.

9              Defendant Charles Spurlock has made evidentiary objections to portions of

10   plaintiff's motion to remand, and moves to strike those portions objected to.  *See* ECF No. 27.  In

11   essence, Mr. Spurlock attempts to mount a factual attack on plaintiff's allegations in the

12   complaint.  Such an attack is properly presented in a motion to dismiss.  While noting that Mr.

13   Spurlock also has filed a motion to dismiss, ECF No. 31, the court addresses here the threshold

14   question of remand.  Mr. Spurlock's motion is DENIED.

15             B.       Complaint

16                      1.       Environmental Health Department Investigation

17             On September 9, 2011, the San Joaquin County Environmental Health Department

18   ("EHD") received a complaint of numerous health and safety violations occurring at Herman and

19   Helen's Marina (the Marina), an establishment located on contiguous land, levee, and water

20   parcels known as 15135, 15050, and 15123 W. Eight Mile Road, Stockton California 95219, and

21   assessor parcel numbers 069-080-21, 069-090-31, 069-090-37, and 069-010-10 ("Subject

22   Property").  Compl. ¶¶ 3, 69, ECF No. 1.  The health and safety violations arose from an

23   occupied, unpermitted mobile home, an unpermitted restroom building, an illegal septic system,

24   and the use of a holding tank for sewage from a portable restroom.  *Id.* ¶ 69.  In November 2011,

25   the EHD issued a Notice and Abate Order to Delta Transport, Inc. (Delta Transport), an owner of

26   the Marina, and the Delta Farms Reclamation District, an owner of the Subject Property.

27

28

1  *Id.* ¶ 82.  While the Reclamation District remedied all health and safety violations within its

2  control, including destroying all abandoned septic tanks, other violations remain uncorrected.  *Id.*

3  ¶ 84.

4  In May 2015, EHD received a complaint regarding "[s]hip cutting operations at

5  [the Marina]."  *Id.* ¶ 85.  After investigating, the EHD issued Waste Discharge and Spill Response

6  Notices to Delta Transport and Richard Churches.  *Id.* at ¶ 87.  Mr. Churches is the owner of at

7  least three large freight barges, one large decommissioned military vessel known as a

8  minesweeper and named the Chaleur, and a wooden vessel moored at the Subject Property.

9  *Id.* ¶¶ 13, 87.  These Notices were issued for violations arising from waste discharge within 150

10  feet of a waterway.  *Id.* ¶¶ 87(a)–(b).  Neither Delta Transport nor Richard Churches took

11  corrective action.  *Id.* ¶ 99.

12  That same month, EHD received another complaint, which stated the Chaleur was

13  sinking or leaning very heavily, with possible oil slicks spilling into the water.  *Id.* ¶ 91.  The

14  complainant noted scrap, garbage, and oil residue covered the decks of the Chaleur, and

15  aluminum cuttings fell into the water as a result of someone "cutting up" the Chaleur.  *Id.*  After

16  confirming spills from the Chaleur constituted hazardous waste, EHD mailed a Waste Discharge

17  and Spill Response Notice to Abate to Richard Churches, Delta Transport, and the attorney for

18  Mr. Churches, identified as Glen Peterson.  *Id.* ¶ 97.  No one has taken corrective action.  *Id.*

19  ¶¶ 99–101.

20  2.  County Community Development Department Investigations

21  On December 20, 2013, the County's Community Development Department

22  ("CDD") received a complaint of a ship salvage and repair business operating at the Marina.

23  *Id.* ¶ 33.  After investigating the complaint, the CDD issued a Notice to Comply against Delta

24  Transport and the Marina for operating a mooring facility for large ships and expanding the

25  Marina without a proper land use permit.  *Id.* ¶ 39.  On March 12, 2014, the CDD received

26  another complaint regarding barges, floating homes, and large moored ships at the Marina.

27  *Id.* ¶ 42.  After investigating, the CDD issued another Notice to Comply against Delta Transport

28  and the Marina.  *Id.* ¶ 58.  Neither Delta Transport nor the Marina complied with the Notice.  *Id.*

3

On February 9, 2015, CDD received a complaint regarding Mr. Churches' salvage and construction operation on the Subject Property, including dismantling a 40-foot boat and bringing in another unpermitted barge. *Id.* ¶ 59.  Two days later, a CDD representative spoke with Mr. Churches, who confirmed he was performing salvage operations. *Id.* ¶ 61.  Mr. Churches has not stopped performing salvage operations. *Id.* ¶ 68.

C.  Procedural History

On March 16, 2016, the County of San Joaquin filed suit in San Joaquin County Superior Court, alleging defendants violated San Joaquin County Development Title 9; the San Joaquin County Ordinance Code; and California Business and Professions Code Section 17200, *et. seq*. *Id.* ¶¶ 111–127.  The County named ten defendants connected with Herman and Helen's Marina: (1) David Johnson; (2) Delta Transport; (3) Herman and Helen's Marina; (4) John Campagna; (5) Chuck Spurlock; (6) H&H Marina Properties; (7) Joe Faso; (8) Joseph Zeiter; (9) Richard "Rick" Churches; and (10) Mario Sculatti. *Id.* ¶¶ 5–13.

On April 20, 2016, defendants removed the case to this court.  Not. Remov., ECF No. 1.  In their notice, defendants contend this court has jurisdiction because the Marina is "located on navigable Federal [w]aters," and is adjacent to levees constructed by the Army Corps of Engineers.  *Id.* ¶¶ 15, 18.

After removal, defendants John Campagna and Chuck Spurlock moved to dismiss the County's complaint.  ECF Nos. 17, 31.  Mr. Spurlock brought an additional motion to strike, dismiss, or amend the complaint, ECF No. 22, and to consolidate this case with *California v. Herman and Helen's Marina*, Case No. 16-00803 (E.D. Cal. filed Apr. 19, 2016) ("803 Case"), which was closed in June 2016.  *See* ECF No. 18.

The County has moved to remand this case back to the Superior Court.  Mot. Remand,  ECF No. 19.  Further, the County has opposed Mr. Campagna's motion to dismiss the complaint, ECF No. 26, opposed Spurlock's motion to strike, dismiss, or amend the complaint, ECF No. 35, and filed a non-opposition to Spurlock's motion to consolidate, ECF No. 21.   The County did not respond to Mr. Spurlock's motion to dismiss the County's complaint.

4

Mr. Campagna and Mr. Spurlock oppose the County's motion to remand. Campagna Opp'n, ECF No. 28; Spurlock Opp'n, ECF No. 29.  Mr. Spurlock also moves to strike portions of the County's motion to remand.  ECF No. 27.  The County did not reply to Mr. Spurlock's motion to strike portions of the County's motion to remand.  Mr. Campagna replied to the County's opposition to his motion to dismiss.  ECF No. 32.  Mr. Spurlock replied to the County's opposition to its motion to strike portions of the County's motion to remand.  ECF No. 38.

The court has addressed Mr. Spurlock's motion to strike above.  Because the court remands the case, as explained below, it does not reach the merits of the other pending motions, but DENIES them as moot.

II.     LEGAL STANDARD

When a case of the type "of which the district courts of the United States have original jurisdiction" is initially brought in state court, a defendant may remove it to federal court. 28 U.S.C. § 1441(a).  District courts have original jurisdiction over civil actions arising under federal law.  *Id.* § 1331.

Under § 1331, district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  *Id.*  As also discussed below, courts have original jurisdiction over cases in admiralty.  U.S. Const. Art. III, § 2, cl. 1; 28 U.S.C. § 1333(1).  Under the longstanding well-pleaded complaint rule, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]."  *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Federal question jurisdiction cannot rest upon an actual or anticipated defense or counterclaim. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

The Ninth Circuit strictly construes the removal statute against removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.  *Id.*  The "strong presumption" against removal jurisdiction means that the defendant always has the burden of

1  establishing that removal is proper. *Id.* There appears to be no exception to this rule when a

2  defendant, as here, seeks to remove a case based on an assertion of admiralty jurisdiction.

3  III.    <u>DISCUSSION</u>

4        The County contends this court has no jurisdiction over this case because neither

5  the complaint nor defendants' federal defenses provide a basis for federal question jurisdiction.

6  Mot. Remand at 4–8. Mr. Spurlock and Mr. Campagna oppose the County's motion, contending

7  the County asserts claims that fall within this court's admiralty jurisdiction. Campagna Opp'n at

8  10; Spurlock Opp'n at 2.

9        A federal court's authority to hear cases in admiralty flows initially from the

10  Constitution, which "extend[s]" federal judicial power "to all Cases of admiralty and maritime

11  Jurisdiction." U.S. Const., Art. III, § 2. Congress has embodied that power in a statute giving

12  federal district courts "original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime

13  jurisdiction . . . ." 28 U.S.C. § 1333(1); *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock*

14  *Co.* (*Jerome*), 513 U.S. 527, 531 (1995). In 1948, Congress enacted the Extension of Admiralty

15  Jurisdiction Act, which provides,

16  
17          [t]he admiralty and maritime jurisdiction of the United States
        extends to and includes cases of injury or damage, to person or
        property, caused by a vessel on navigable waters, even though the
        injury or damage is done or consummated on land.
18  

19  46 U.S.C. § 30101; *see also Jerome*, 513 U.S. at 532 (reviewing provisions of the Extension of

20  Admiralty Jurisdiction Act). The purpose of the Act was to clarify the sometimes confusing line

21  between land and water, by investing admiralty with jurisdiction over "all cases" where the injury

22  was caused by a ship or other vessel on navigable water, even if such injury occurred on land.

23  *See, e.g., Jerome*, 513 U.S. at 532; *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 260

24  (1972) ("This Act was passed specifically to overrule cases . . . holding that admiralty does not

25  provide a remedy for damage done to land structures by ships on navigable waters"); *Gutierrez v.*

26  *Waterman S.S. Corp.*, 373 U.S. 206, 209–10 (1963) (discussing Act in context of ship owner's

27  liability for his torts which have impacts on shore). Specifically, the Act clarified jurisdictional

28

1    questions over cases where, for example, a tort action was brought by the owner of warehouse

2    destroyed in a fire that started on board a ship docked nearby.  *Jerome*, 513 U.S. at 532.

3           A party seeking to invoke federal admiralty jurisdiction must satisfy conditions

4    both of location and connection with maritime activity.  *Jerome*, 513 U.S. at 534.  A court

5    applying the location test must determine whether the incident occurred on navigable water or

6    whether an injury suffered on land was caused by a vessel on navigable water.  *Id.*  The

7    connection test requires two separate considerations.  A court first must "assess the general

8    features of the type of incident involved," to determine whether the incident has "a potentially

9    disruptive impact on maritime commerce."  *Id.* (internal citations omitted).  The "general

10   features" test turns on a description of the incident at an intermediate level of possible generality.

11   *Id.* at 539.  Second, the court must determine whether "the general character" of the "activity

12   giving rise to the incident" shows a "substantial relationship to traditional maritime activity."  *Id.*

13   at 535.  In analyzing the second part, the court asks whether the wrongdoer's activity, commercial

14   or noncommercial, on navigable waters is so closely related to activity traditionally subject to

15   admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.

16   *Id.* at 539–40.  Navigation of boats in navigable waters clearly falls within the substantial

17   relationship.  *Id.*  Storing such boats at a marina on navigable waters is close enough to support

18   the required connection, whereas in flying an airplane over the water, or in swimming, the

19   relationship is too attenuated.  *Id.*

20          Here, the Marina is located on contiguous land, levee, and water parcels.  Compl.

21   ¶¶ 3, 69.  Mr. Spurlock and Mr. Campagna contend the Marina is located on "navigable waters,"

22   and is adjacent to the levees constructed by the Army Corps of Engineers.  Campagna Opp'n at

23   10; Spurlock Opp'n at 2.  These factors, defendants contend, mean the Marina "easily qualifies as

24   a maritime situs."  Campagna Opp'n at 10; Spurlock Opp'n at 2.  But in making their breezy

25   "easy qualification" argument, defendants rely only on the notice of removal, which does make

26   assertions consistent with admiralty jurisdiction.  *See* Campagna Opp'n at 6.  In determining

27   removability, however, as a general matter the court reviews the four corners of the complaint.

28   *See Ultramar Am. Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990) ("existence of federal

7

1   question jurisdiction is determined from the face of the complaint").  Here, the court has carefully

2   reviewed the complaint itself and cannot say that, on its face, it necessarily invokes federal

3   admiralty jurisdiction.  Even if the court took notice of certain facts pled in the complaint that

4   might give rise to admiralty jurisdiction, to conclude this court definitively has jurisdiction would

5   require the making of arguments that as a general rule are outside the court's province.  *See*

6   *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994)  (courts do not "manufacture" arguments for a

7   litigant, and "[j]udges are not like pigs, hunting for truffles buried in briefs") (citation omitted).

8   Because defendants do not point to authority supporting their bare conclusion that the record here

9   demonstrates the Marina's location on navigable waters, they have not satisfied the "location"

10  requirement of maritime jurisdiction.  Accordingly, the court need not address whether

11  defendants have satisfied the "connection" requirement, and concludes defendants have not met

12  their burden of establishing jurisdiction in this court.

13  IV.   <u>CONCLUSION</u>

14         The County's motion to remand, ECF No. 19, is GRANTED and the case is

15  remanded to San Joaquin County Superior Court.  Mr. Spurlock's motion to strike portions of the

16  County's motion to remand, ECF No. 27, is DENIED.  Mr. Campagna' request for judicial notice,

17  ECF No. 28-1, is DENIED.  Mr. Spurlock's motions to consolidate cases, ECF No. 18, to

18  dismiss, ECF No. 31, and to dismiss, strike, or amend the complaint, ECF No. 22, are DENIED

19  as MOOT.  Mr. Campagna's motion to dismiss, ECF No. 17, is similarly DENIED as MOOT.

20  This case is CLOSED.

21         This order resolves ECF Nos. 17, 18, 19, 22, 27, and 31.

22         IT IS SO ORDERED.

23  DATED:  October 12, 2016.

24

25  _____

26  UNITED STATES DISTRICT JUDGE

27

28